# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-10022
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
October 1, 2014
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SYDNEY MELISSA NAVARRO,

Defendant-Appellant

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV - 4 2014
CLERK, U.S. DISTRICT COURT
By _____
Deputy

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CR-100-7

Before JONES, BENAVIDES, and GRAVES, Circuit Judges.

PER CURIAM:*

Sydney Melissa Navarro pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and was sentenced to a 324-month term of imprisonment. Navarro now appeals her sentence. We review the district court's application of the Sentencing Guidelines de novo, and its factual

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

findings are reviewed for clear error. *United States v. Villanueva*, 408 F.3d 193, 202-03 & n.9 (5th Cir. 2005).

Navarro's first issue concerns the calculation of her base offense level (BOL) under U.S.S.G. § 2D1.1(c). She does not dispute the finding that she was responsible for 1,786.05 grams of a mixture or substance containing methamphetamine, a quantity that would result in a BOL of 34. § 2D1.1(c)(3). Finding that a quantity of drugs seized from Navarro's sole supplier had an average purity rate of 92.2%, however, the district court used that purity rate to determine that the drug mixture attributable to Navarro contained more than 1.5 kilograms of actual methamphetamine and to assign Navarro a BOL of 38. § 2D1.1(c)(1). Given the evidence that the drug mixture attributable to Navarro and the drug mixture that was analyzed for purity all came from the same, sole source, a finding that the drugs attributable to Navarro also had an average purity rate of 92.2% is plausible and, thus, not clearly erroneous. *See United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012). Additionally, nothing in the record suggests that the drugs attributable to Navarro had an average purity rate of less than 80%. Even assuming a purity rate of only 80%, the district court did not err in applying a BOL of 38 in this case. *See Rodriguez*, 666 F.3d at 947; *United States v. Sherrod*, 964 F.2d 1501, 1508 (5th Cir. 1992); § 2D1.1(c)(1); § 2D1.1(c)(1), Notes (B) & (C).

We turn next to Navarro's argument that the district court erred in applying a two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Testimony from a law enforcement officer at sentencing and the unrebutted facts in the PSR and its addenda support the district court's finding that Navarro and her on-and-off boyfriend moved from hotel to hotel, selling methamphetamine from the rooms in which they stayed. It also supports the

Case 4:13-cr-00100-A Document 336 Filed 11/04/14 Page 3 of 3 PageID 1410
No. 14-10022

finding that Navarro used a residence in Fort Worth, Texas, to run her drug-trafficking business. Navarro offers no legal support for her conclusional argument that a premises must be specifically identified as a prerequisite to its use for the application of a § 2D1.1(b)(12) enhancement. Navarro has not shown that the district court's factual findings were clearly erroneous or that it erred in applying § 2D1.1(b)(12) in this case. *See Alaniz*, 726 F.3d at 618; § 2D1.1(b)(12) & comment. (n.17).

    AFFIRMED.